FILED
DEC - 7 2022
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOHN POUND, ) <br> ) <br> Defendant. ) | No. **4:22-CR-699-SRC/SRW** |

# INDICTMENT

The Grand Jury charges that:

## INTRODUCTION

1. At all times relevant to this Indictment, the property at 22 North Euclid Avenue, in St. Louis, Missouri, within the Eastern District of Missouri, was owned by two entities: 22 North Euclid Commercial Condominiums Association ("Association") and 22 North Euclid Management, Inc., also known as Manageable Information Systems, Inc.

2. At all times relevant to this Indictment, defendant John Pound ("Pound") was the management agent of the Association and 22 North Euclid Management, Inc.

3. At all times relevant to this Indictment, Pound owned Commercial Realty Management, Inc., which provided real estate management services to both entities.

4. As part of his duties, Pound maintained each entities' bank accounts and paid bills on their behalf.

5. At all times relevant to this Indictment, 22 North Euclid Management, Inc. maintained a bank account with Enterprise Bank and Trust ending in #2621.

6.  At all times relevant to this Indictment, the Association maintained a bank account with Busey Bank ending in #5968.

7.  At all times relevant to this Indictment, Pound maintained two bank accounts with Enterprise Bank and Trust ending in #7751 and #7786, and an account with Regions Bank ending in #5815.

8.  Pound was a signor on the Enterprise Bank and Trust account which the building operations were run from.

9.  On or about January 1, 2003, the Association executed a "Property Management Agreement" with Commercial Realty Management, Inc. The "Property Management Agreement" included many provisions, including:

>   A. A management fee that required the management agent to maintain the property for an initial management fee of $450 per month through October 2008. On November 1, 2008, the Association increased the management fee to $550 per month;
>
>   B. An hourly fee, that, upon specific approval by the Association, the management agent, for a $90 hourly fee, may provide other special services or consulting services that are not part of the management services.

10. On January 1, 2003, 22 North Euclid executed a separate "Property Management and Exclusive Leasing Agreement" with Commercial Realty Management, Inc. represented by Pound.

11. On or about January 1, 2003, the Association executed a "Property Management and Exclusive Leasing Agreement" including the following provisions regarding the payment of the following fees and commissions to Pound, the management agent:

2

A. A management fee that required the management agent to maintain the property for an initial management fee of $450 per month through October 2008 then, effective November 1, 2008, when the Association agreed to increase the management fee to $550 per month.

B. Commission in the amount of 3% of the gross rental payments to be paid upon the signing of a new lease and occupancy by the tenant, with limitations based on the length of the lease.

C. Commission in the amount of 1.5% of the gross rental payments due upon the signing of a lease renewal, with limitations based on the length of the lease.

D. Commission in the amount of 2.0% of the expansion amount of gross rental payments due upon the signing of a lease expansion, with limitations based on the length of the lease.

E. An hourly fee of $90, upon the specific approval by the owner, in connection with other special services or consulting services that were not otherwise part of the management services.

12. Pound, while operating Commercial Realty Management, Inc., embezzled funds by taking significantly larger management fees, keeping larger commissions, failing to get prior approval for conducting extra services, and charging higher hourly rates than specified by the contracts.

13. Beginning in 2010 through June 30, 2020, Pound arbitrarily increased the monthly fee to each entity, without consultation with the property owners, and paid himself that fraudulently increased monthly fee more than 12 times per year.

14. Pound prepared annual budgets for both entities which misrepresented the monthly

management fee and concealed the inflated fees Pound was collecting.

15. Instead of paying himself lease commissions when due, as outlined in the management agreement, in 2009 Pound began making commission payments to his company when no commission was due.

16. For the period January 1, 2006, through June 30, 2020, Pound paid himself $220,000 in commission payments he had not legitimately earned for 22 North Euclid.

17. Commercial Realty Management, Inc., through Pound, made several fraudulent entrees into the QuickBooks accounting system.

18. In numerous instances, Pound listed other vendors as the payee in QuickBooks, when in fact, those payments went to Pound.

19. Pound's entries in QuickBooks falsely reduced the payments Pound had made to himself.

20. Pound concealed from the owners' accountant that he was the actual payee of many of the fraudulent payments.

21. From January 1, 2015, through December 31, 2019, Pound entered in QuickBooks approximately 132 transactions totaling over $190,000 falsely identifying a third-party payee as the source of payments made to Pound, when in truth and fact, Pound himself had made the payments.

22. At all times relevant to this Indictment, payments from Enterprise Bank and Trust and Busey Bank to those accounts held by the defendant were completed by means of interstate wire transmission.

23. There is a total combined loss of over approximately $220,000.

## THE SCHEME

24. Beginning on or about January 1, 2006 through on or about June 30, 2020, Pound knowingly and intentionally devised and executed a scheme and artifice to defraud, and obtain money and property from 22 North Euclid Commercial Condominiums Association and 22 North Euclid Management, Inc., by means of material false and fraudulent pretenses, representations and promises in that Pound, without the knowledge or authorization of 22 North Euclid Commercial Condominiums Association and 22 North Euclid Management, Inc., embezzled funds by taking significantly larger management fees, keeping larger commissions, failing to get prior approval for payments to himself, and charging higher hourly rates than specified by the contracts and concealed his theft through materially false accounting entries that misrepresented the payee or the amount of the payments Pound collected.

## MANNER AND MEANS

It was part of the scheme that:

25. On or about January 3, 2020, Pound, fraudulently and without permission, caused two payments of $550 and $1300 from 22 North Euclid Management, Inc. account with ending in #2621 to his account with Enterprise Bank and Trust account ending in #7751. Pound was not authorized to make these payments for management fees.

26. On or about February 7, 2020, Pound, fraudulently and without permission, caused two payments of $750 and $750 from the Association from the account with Busey Bank ending in #5968 to his account at Enterprise Bank and Trust account ending in #7751. Pound was not authorized to make these payments for management fees.

27. From January 1, 2015, through December 31, 2019, Pound fraudulently caused approximately 132 transactions to take place where Pound was receiving funds, but QuickBooks stated that the payee was another third party.

28. Defendant Pound wrote checks to his company but, in order to avoid detection, entered into QuickBooks that the checks were for other purposes:

   A. On February 19, 2018, defendant Pound caused a check to be written and drawn on the 22 North Euclid Management, Inc. account with Enterprise Bank and Trust ending in x2621 in the amount of $2,500 to his bank with Enterprise Bank and Trust account ending in #7751.

   B. On February 19, 2019, defendant Pound caused a check to be written and drawn on the 22 North Euclid Management, Inc. account with Enterprise Bank and Trust ending in x2621 in the amount of $3,152 to his bank with Enterprise Bank and Trust account ending in #7751.

   C. On January 3, 2020, defendant Pound caused a check to be written and drawn on the 22 North Euclid Management, Inc. account with Enterprise Bank and Trust ending in x2621 in the amount of $2,400 to his account with Enterprise Bank and Trust account ending in #7751.

## COUNTS I-III
### (Wire Fraud)

29. Each of the allegations of Paragraphs 1 through 28 of this Indictment is hereby incorporated by reference as if fully set forth herein.

30. On or about each of the dates set forth below, in the Eastern District of Missouri, the defendant,

**JOHN POUND,**

for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| COUNT | ON OR ABOUT DATE | WIRE TRANSACTION |
|---|---|---|
| I | February 19, 2018 | Check drawn on the 22 North Euclid Management, Inc. account with Enterprise Bank and Trust ending in x2621 in the amount of $2,500 to his bank with Enterprise Bank and Trust account ending in #7751 |
| II | February 19, 2019 | Check drawn on the 22 North Euclid Management, Inc. account with Enterprise Bank and Trust ending in x2621 in the amount of $3,152 to his bank with Enterprise Bank and Trust account ending in #7751 |
| III | January 3, 2020 | Check drawn on the 22 North Euclid Management, Inc. account with Enterprise Bank and Trust ending in x2621 in the amount of $2,400 to his account with Enterprise Bank and Trust account ending in #7751 |

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1. Pursuant to Title 18, United States Code, Sections 981(a) and Title 28, United States Code, Section 2461(c), upon conviction of an offense in violation of Title 18, United States Code, Section 1343 as set forth in Count(s) 1-3, the defendant shall forfeit to the United States of America any property, real or personal, constituting or derived from any proceeds traceable to such violations.

2. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to said violations, the amount of which is at least $220,000.

3. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____
FOREPERSON

_____
SAYLER A. FLEMING
United States Attorney

_____
EDWARD L. DOWD III, #61909(MO)
Assistant United States Attorney